[Cite as *State v. Brown*, 2011-Ohio-6782.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | William B. Hoffman, P.J. |
|  | : | John W. Wise, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 2011-CA-0021 |
|  | : |  |
|  | : |  |
| CHRISTOPHER L. BROWN | : | O P I N I O N |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:        Criminal Appeal from Richland
                                County Court of Common Pleas Case
                                No. 2010-CR-700D

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         December 23, 2011

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JAMES J. MAYER, JR.                     PATRICIA O'DONNELL KITZLER
Prosecuting Attorney                    Anderson, Will, O'Donnell
Richland County, Ohio                   & Kitzler, LLC
                                        3 North Main Street, Ste. 801
BY: DANIEL J. BENOIT                    Mansfield, Ohio  44902
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio  44902

*Edwards, J.*

**{¶1}** Appellant, Christopher Lamar Brown, appeals a judgment of the Richland County Common Pleas Court convicting him of murder in violation of R.C. 2903.02(A) with a firearm specification (R.C. 2941.145), murder in violation of R.C. 2903.02(B), felonious assault (R.C. 2903.11(A)(2)) and carrying a concealed weapon (R.C. 2932.12(A)). Appellee is the State of Ohio.

<u>STATEMENT OF FACTS AND CASE</u>

**{¶2}** On March 9, 2010, Shawntease Moore heard appellant and DeCarrio Couley arguing in front of a home in her neighborhood. She was familiar with both DeCarrio and appellant. She saw a tan Chevy Blazer with tinted windows speed away from the argument with tires squealing. As the vehicle drove past her house, a streetlight illuminated the vehicle and she saw appellant in the driver's seat. Appellant's driving was too fast and out of control, nearly striking a light post. She was concerned that things were about to turn bad in the neighborhood and called her children in for the night. She noticed that appellant was wearing a black hoodie and grey faded jeans and had his hair pulled back in a ponytail that was bushy in the back. Later that evening, Shawntease and her children made their way to another part of the neighborhood where a friend was picking them up to take them to the Dollar General store.

**{¶3}** Shawntease's son, Shaquan Moore, knew DeCarrio from the neighborhood. He also knew appellant by sight, although he only knew him as "Chris." He did not know appellant's last name until after the shooting. Shaquan was playing football outside with his brother when he saw appellant and DeCarrio arguing outside a home owned by Rico Feagin. Appellant and DeCarrio were shoving each other.

Appellant told DeCarrio to get out of his face. DeCarrio responded, "Fuck you, you ain't going to do shit about it." Appellant responded, "You get out of my face. I don't fuck with nobody down here in Mansfield." Appellant told DeCarrio, "Every time you see me, I either got my son or my strap. So you better watch your back." Shaquan knew that in his neighborhood, a "strap" is a gun. After this argument, Shawntease called Shaquan and his brother into the house. Shaquan saw appellant speed off in his SUV, telling DeCarrio, "I'll be back." Shaquan noted that appellant was wearing a black hoodie, dark faded jeans and had his hair pulled back in a bushy ponytail.

{¶4} While walking with his mother and siblings to meet their ride to the Dollar General, Shaquan's younger brother dropped a spider monkey toy. When Shaquan went back with his brother to retrieve it, he saw appellant and DeCarrio walking up the street together. He saw them walk up Sixth Street toward an alley and noticed a police cruiser going across Sixth Street. As Shaquan got into the van to ride to the store, he heard a loud noise, which he believed was a firecracker.

{¶5} Between 7:30-8:00 p.m. on March 9, 2010, Shawntease's sister, Shadeena Brooks, went outside to smoke a cigarette on her porch because she does not smoke in her home. There is a streetlight across from her home, on the corner. She knew both appellant and DeCarrio from math class in high school. The pair spent a lot of time together and were known at school as "Ebony and Ivory" because DeCarrio had lighter skin and appellant had darker skin. She also knew both men from when she worked at McDonald's and Wendy's, and they would come in and talk with her.

{¶6} After Shadeena saw Shawntease and her children on their way to the store, she heard arguing. She heard someone say, "Nigger, I saved you, I saved you…

You know it ain't that serious. Come on back down here. Quit playing, you know it ain't that serious." She looked up to see two men walking. She heard one man say, "What nigger? I'll pop you." At this point she stood up to see what was going on. She heard, "Man, you ain't gonna pop me. We been friends since school. It ain't even that serious." The other person pulled out a gun and said, "Nigger I will pop you." The gun was fired. She could see DeCarrio's face and knew he had been shot. DeCarrio fell to the ground. She heard DeCarrio say, "Ah, shit nigger. You shot me. You shot me. Chris, man, it ain't even that serious. Just go on about your business. I ain't gonna say shit. Just go and leave me alone." She saw DeCarrio get shot two more times. When the shooter moved before shooting DeCarrio the third time, his face was illuminated by a streetlight and she recognized appellant as the shooter. Shadeena noticed a police car at the corner. Appellant stood in the alley like he was waiting for the officer to get out of the car. As the officer sped across the street, she heard a fourth shot and then saw appellant run down the alley.

{¶7} Officer David Johnson of the Mansfield Police Department was traveling north on Sycamore Street at 8:14 p.m. He could see two African-American males in an alley, one with a dark complexion and one with a lighter complexion. As he turned on to Sixth Street, he heard someone say, "Shut the fuck up nigger, I'll kill you." As he backed his cruiser up to the alley, he heard shots fired. He dove from his cruiser and saw the man with the lighter complexion fall to the ground. He saw a man north of the pair run away, and he looked up and saw a gun pointed at him. The man with the darker complexion then ran down the alley. The officer believed this man was wearing a hoodie, and his hair was bushy in the back. The man the officer viewed running away

to the north was later identified to be Cliff Mills, who did not meet the description of the man with a gun.

{¶8}   Officers arrived on the scene and located four bullet casings.  Officer Steve Hornback arrived with his dog, Astor.  Astor is trained to track a human scent, but not the scent of a specific individual.  The first tracks the police found in the snow did not result in a successful track by Astor.  However, police found a second set of tracks which they believed to be fresh because the sides of the print were raised.  Astor immediately picked up the track and pulled hard, indicating that the scent was fresh. The dog led police to a blue home at 348 Spayer Lane, next to a white house behind which two SUV's were parked:  a black and silver Chevy Blazer owned by appellant and a tan Blazer owned by appellant's mother.  The tan SUV matched the description given to police of the vehicle appellant was driving.  Neighbors knew appellant lived in the blue house and he had been seen at the white house next door.  However, appellant was not in the blue house when police followed Astor's trail.

{¶9}   Following the shooting, Shadeena was very upset and her family was called to the house.  She told both her sister Shawntease and her stepfather, "I seen Chris shoot Carrio."  She told police the shooter was male, 25-27 years old, around 5'6" or 5'7" tall, dark skinned, with hair sticking out of the back of his head and a goatee. She identified appellant from a photo array the evening of the shooting.

{¶10} DeCarrio was pronounced dead at the hospital.  Four bullets were recovered from his body.  According to the coroner, he had four gunshot tracks:  three in his torso, and one which passed through his genitals, scrotum, and right thigh.

{¶11} Appellant turned himself in at the police station on March 10, 2010. He was indicted under case no. 10-CR-176D for two counts of murder, one count of attempted murder, felonious assault, and carrying a concealed weapon, all with firearm specifications. The first trial resulted in a mistrial after jurors visited the crime scene on their own.

{¶12} Appellant was reindicted in the instant case on October 8, 2010, with aggravated murder with a firearm specification, two counts of murder with firearm specifications, one count of attempted murder with a firearm specification, felonious assault with a firearm specification, and carrying a concealed weapon. The earlier indictment was dismissed.

{¶13} Appellant filed a motion for appropriation of funds for an expert witness on eyewitness identification. The court denied the motion. However, after trial the court granted a motion for extraordinary fees, which included $1,000.00 to be paid to the expert for consulting.

{¶14} The case proceeded to jury trial in the Richland County Common Pleas Court. Appellant was convicted of murder in violation of R.C. 2903.02(A) with a firearm specification (R.C. 2941.145), murder in violation of R.C. 2903.02(B), felonious assault (R.C. 2903.11(A)(2)) and carrying a concealed weapon (R.C. 2932.12(A)). The trial court sentenced him to a term of incarceration of 15 years to life for murder, and merged the second murder conviction and the felonious assault conviction into this conviction. The court sentenced appellant to twelve months incarceration for carrying a concealed weapon and three years incarceration on the firearm specification, for an

aggregate term of 19 years to life. The charges of aggravated murder and attempted murder were dismissed. Appellant assigns three errors on appeal:

**{¶15}** "I. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR AN EXPERT AT STATE EXPENSE, THUS DEPRIVING APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY SECTION 16, ARTICLE 1 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION.

**{¶16}** "II. APPELLANT'S CONVICTIONS ARE CONTRARY TO THE MANIFEST WEIGHT AND SUFFICIENCY OF EVIDENCE PRESENTED AT TRIAL, THUS DENYING APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND UNDER ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION.

**{¶17}** "III. IT WAS PLAIN ERROR FOR THE COURT TO PERMIT THE PROSECUTOR'S PARTICIPATION IN THE DECISION TO DENY THE MOTION FOR AN EYEWITNESS IDENTIFICATION EXPERT AT STATE EXPENSE."

I

**{¶18}** In his first assignment of error, appellant argues that the trial court erred in overruling his motion for the appointment of an expert witness on eyewitness testimony.

**{¶19}** R.C. 2929.024 provides in pertinent part:

**{¶20}** "If the court determines that the defendant is indigent and that investigation services, experts, or other services are reasonably necessary for the proper representation of a defendant charged with aggravated murder at trial or at the sentencing hearing, the court shall authorize the defendant's counsel to obtain the

necessary services for the defendant, and shall order that payment of the fees and expenses for the necessary services be made in the same manner that payment for appointed counsel is made pursuant to Chapter 120. of the Revised Code."

{¶21} As a matter of due process, indigent defendants are entitled to receive the "raw materials" and the "basic tools of an adequate defense." *Ake v. Oklahoma* (1985), 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53, quoting *Britt v. North Carolina* (1971), 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400. In *State v. Mason* (1998), 82 Ohio St.3d 144, 150, 694 N.E.2d 932, the Ohio Supreme Court held that "due process * * * requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial."

{¶22} In *State v. Sargent*, 169 Ohio App.3d 679, 864 N.E.2d 155, 2006 -Ohio-6823, the Court of Appeals for the First District found that the trial court abused its discretion in denying the appointment of an expert witness on eyewitness testimony where the state's case was based on the identification of one person, and that person was under the stress of being held at gunpoint. Id. at ¶13. Similarly, in *State v. Bradley*, 181 Ohio App.3d 40, 907 N.E.2d 1205, 2009-Ohio-460, the Eighth District found the trial court abused its discretion in denying the appointment of an expert on eyewitness identification where the state's case was based primarily on the identification of the victim, who was attacked and traumatized by the incident, had never

seen the perpetrator before, did not identify him until 30 days after the incident, and the case involved cross-racial identification. Id. at ¶16.

**{¶23}** In the instant case, Shadeena Brooks was the primary witness to the shooting. She was not the victim and thus was not under the stress of having the gun pointed at her. Although Shawntease Moore testified that it was drizzling outside, all other witnesses testified that the night was clear. There was snow on the ground, reflecting light from the streetlight. Brooks went to high school with both appellant and the victim. She specifically saw appellant's face when he stepped into the illumination of the streetlight before he shot the victim a second time, and she heard DeCarrio call the shooter "Chris" as he lay on the ground. Shortly after the shooting, she told both her sister and her stepfather that she saw appellant shoot DeCarrio, and she identified appellant from a photo array that night. The identification did not involve cross-racial identification. In addition, both Shawntease Moore and her son Shaquan identified appellant as the man they saw arguing with DeCarrio earlier in the day, and they both knew both appellant and DeCarrio from the neighborhood. The shooting was witnessed in part by Officer David Johnson, who described the shooter as wearing a hoodie and having bushy hair in the back, a description which matched that of appellant given by Shawntease and Shaquan. In addition, a police dog tracked the shooter from the crime scene to appellant's front door.

**{¶24}** Appellant has not demonstrated that the trial court abused its discretion in finding that there was not a reasonable probability that an eyewitness would aid in the defense and denial of the expert would result in an unfair trial. The fact that the shooting took place at night is a factor within the understanding and experience of the

jury, and the court further allowed the jury view to take place after dark. In addition, the trial court allowed $1,000.00 to be paid to the expert for consultation, and counsel extensively cross-examined witnesses on their identification of appellant.

**{¶25}** Appellant also argues the court erred in taking judicial notice of the testimony at the first trial in ruling on the motion. The judgment entry does not reflect that the court took judicial notice of any testimony from the first trial. The court merely cites to factual differences between the identification of the perpetrator in *Bradley* and that in the instant case. These factual differences were set forth in the State's response to the motion for appropriation of funds for an expert.

**{¶26}** Finally, appellant argues the State had no standing to respond to his motion. Appellant cites no legal authority in support of his proposition that the State lacked standing to file a response.

**{¶27}** The first assignment of error is overruled.

II

**{¶28}** Appellant argues that the judgment is against the manifest weight and sufficiency of the evidence. He argues that the testimony of the witnesses is inconsistent and therefore not credible.

**{¶29}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678

N.E.2d 541, 1997-Ohio-52, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶30} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶31} Appellant was convicted of murder in violation of R.C. 2903.02(A):

{¶32} "(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."

{¶33} While the witnesses' testimony may have differed somewhat on the details surrounding the events on the day of the murder, Shawntease Moore, Shaquan Moore, and Shadeena Brooks all knew both appellant and the victim. Shawntease and Shaquan saw appellant and DeCarrio arguing earlier in the day. Shadeena witnessed the shooting and testified that she saw appellant's face illuminated by the streetlight. She had known both appellant and DeCarrio for years. She further testified that she heard the victim say after he had been shot, "Chris, man, it ain't even that serious," thus confirming the shooter's identity. Shadeena told two family members shortly after the shooting that she saw appellant shoot DeCarrio and selected appellant from a photo array the same evening as the shooting. The description of what appellant was wearing and how his hair was tied back in a bushy ponytail matched the description given by Officer Johnson, who witnessed the shooting. A police dog tracked the shooter from the scene to appellant's front door. The state presented sufficient evidence to support the

conviction, and appellant has not demonstrated that the jury lost its way in believing the testimony of the witnesses.

**{¶34}** The second assignment of error is overruled.

III

**{¶35}** In his third assignment of error, appellant argues that the court committed plain error in not considering his motion for the appointment of an expert ex parte.

**{¶36}** In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804; Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

**{¶37}** Appellant cites *Ake v. Oklahoma* (1985), 470 U.S. 68, 82-83, in which the United States Supreme Court stated:

**{¶38}** "When the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent."

**{¶39}** However, *Ake* does not require that the motion be considered ex parte. An ex parte hearing may be required when such protection is necessary to protect defense counsel's strategy, but it is not required in every case. *State v. Peeples* (1994), 94 Ohio App.3d 34, 640 N.E.2d 208. In the instant case, there is no indication that an ex parte hearing was required to protect counsel's strategy. Counsel's strategy of attacking the eyewitness identification was not a novel or unique strategy in a case that rested in large part on the testimony of the witnesses to the shooting. Appellant has not

demonstrated that had he been given an ex parte hearing, his request for appropriation of fees would have been granted, the expert would have testified and appellant would have been acquitted.

**{¶40}** The third assignment of error is overruled.

**{¶41}** The judgment of the Richland County Common Pleas Court is affirmed.


By: Edwards, J.

Hoffman, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

[Cite as *State v. Brown*, 2011-Ohio-6782.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CHRISTOPHER L. BROWN | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-0021 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES